IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


M.H.,[1]

                    Plaintiff,

vs.                                        Case No. 19-1276-SAC

COMMISSIONER OF SOCIAL
SECURITY ADMINISTRATION,

                    Defendant.


<u>**MEMORANDUM AND ORDER**</u>

     This is an action appealing the denial of Social Security disability benefits.  Plaintiff alleges that she has been disabled since November 2, 2011.  Previously, this matter was before another judge in this district and remanded for further proceedings.  The latest of three administrative hearings was conducted on December 6, 2017.[2]  The administrative law judge (ALJ) considered the evidence and decided on July 11, 2018 that plaintiff was not qualified to receive benefits.  This decision has been adopted by defendant.  This case is now before the court upon plaintiff's request to reverse and remand the decision to deny plaintiff's application for benefits.

---

[1] The initials are used to protect privacy interests.
[2] The other hearings were conducted on May 22, 2013 and June 2, 2015.

1

I.  STANDARD OF REVIEW

To qualify for disability benefits, a claimant must establish that he or she was "disabled" under the Social Security Act, 42 U.S.C. § 423(a)(1)(E), during the time when the claimant had "insured status" under the Social Security program.  See Potter v. Secretary of Health & Human Services, 905 F.2d 1346, 1347 (10th Cir. 1990); 20 C.F.R. §§ 404.130, 404.131.  To be "disabled" means that the claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).

The court must affirm the ALJ's decision if it is supported by substantial evidence and if the ALJ applied the proper legal standards.  See Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009).  "Substantial evidence" is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Biestek v. Berryhill, 139 S.Ct. 1148, 1154 (2019)(quoting Consolidated Edison Co. v. NLRB, 305, U.S. 197, 229 (1938)).  This standard is "not high," but it is "'more than a mere scintilla.'" Id., (quoting Consolidated Edison, 305 U.S. at 229).  It does not require a preponderance of the evidence.  Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007).

The court must examine the record as a whole, including whatever in the record fairly detracts from the weight of the defendant's decision, and on that basis decide if substantial evidence supports the decision. Glenn v. Shalala, 21 F.3d 983, 984 (10th Cir. 1994) (quoting Casias v. Secretary of Health & Human Services, 933 F.2d 799, 800-01 (10th Cir. 1991)). The court may not reverse the defendant's choice between two reasonable but conflicting views, even if the court would have made a different choice if the matter were referred to the court de novo. Lax, 489 F.3d at 1084 (quoting Zoltanski v. F.A.A., 372 F.3d 1195, 1200 (10th Cir. 2004)). The court reviews "only the sufficiency of the evidence, not its weight." Oldham v. Astrue, 509 F.3d 1254, 1257 (10th Cir. 2007).

II. THE ALJ'S DECISION (Tr. 1223-1237).

There is a five-step evaluation process followed in these cases which is described in the ALJ's decision. (Tr. 1224-25). First, it is determined whether the claimant is engaging in substantial gainful activity. Second, the ALJ decides whether the claimant has a medically determinable impairment that is "severe" or a combination of impairments which are "severe." At step three, the ALJ decides whether the claimant's impairments or combination of impairments meet or medically equal the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. Next, the ALJ determines the claimant's residual functional

capacity and then decides whether the claimant has the residual functional capacity to perform the requirements of his or her past relevant work.   Finally, at the last step of the sequential evaluation process, the ALJ determines whether the claimant is able to do any other work considering his or her residual functional capacity, age, education and work experience.

In steps one through four the burden is on the claimant to prove a disability that prevents performance of past relevant work. Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006).   At step five, the burden shifts to the Commissioner to show that there are jobs in the economy with the claimant's residual functional capacity.   Id.   In this case, the ALJ decided plaintiff's application should be denied at the fifth step of the evaluation process.

The ALJ made the following specific findings in his decision. First, plaintiff last met the insured status requirements for Social Security benefits on December 31, 2016.   Second, plaintiff has not engaged in substantial gainful activity from November 2, 2011 through December 31, 2016.   Third, plaintiff has the following severe impairments:   fibromyalgia, obesity, depression, anxiety, degenerative disc disease/degenerative joint disease of the cervical spine, attention deficit hyperactivity disorder, neuropathy by history, and headaches.

4

Fourth, plaintiff does not have an impairment or combination of impairments that meet or medically equal the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Fifth, plaintiff has the residual functional capacity (RFC) to perform sedentary work as defined in 20 C.F.R. § 404.1567(a) in that she can lift or carry 10 pounds occasionally and 10 pounds frequently, sit for 6 hours out of an 8-hour workday, and stand or walk for 2 hours out of an 8-hour workday. She cannot climb stairs, ramps, ladders, ropes, or scaffolds. She can occasionally balance or stoop. She cannot kneel, crouch, and crawl. And she should have a cane to assist with ambulation. She cannot reach overhead bilaterally. She can perform frequent handling and fingering. She should avoid concentrated exposure to extreme cold, extreme heat, unprotected heights, excessive vibrations, and hazardous machinery. She should not have to work in direct sunlight. And she could perform unskilled work that requires no more than occasional contact with the public and coworkers. Finally, based upon the testimony of a vocational expert, the ALJ determined that plaintiff cannot perform her past relevant work but that she can perform other jobs existing in the national economy, such as document preparer, administrative support specialist and cutter/paster.

III. THE ALJ DID NOT PROPERLY ANALYZE THE EVIDENCE REGARDING PLAINTIFF'S LIMITATIONS FROM FIBROMYALGIA.

A. <u>The ALJ's fibromyalgia findings</u>

The ALJ discussed plaintiff's fibromyalgia at Tr. 1230. He acknowledged that plaintiff may have "fibromyalgia type pain," but said the record was not reflective of it "imposing disabling limitations on her functioning." He noted that examinations "have generally showed mild to moderate abnormalities associated with [plaintiff's] fibromyalgia." He observed that plaintiff has "consistently exhibited multiple tender points" and "some gait abnormality," although he said this has not been consistently documented. "Notably," the ALJ commented, "the record does not indicate that [plaintiff] had any type of atrophy or muscle wasting." He concluded that these findings suggested that plaintiff's pain "has not been so significant as to prevent her from using muscles in an ordinary fashion." "Overall," he stated, the findings did not suggest that plaintiff's fibromyalgia imposed "significant limitations on her functioning."

The ALJ also noted that pain medications (tramadol and Flexeril) were the only targeted treatment given for plaintiff's fibromyalgia, although he did not specify why he reached that conclusion. He indicated that plaintiff did not undergo trigger point injections to alleviate pain or undergo any physical therapy or aquatic therapy. He concluded that the moderate level of

treatment was "not indicative" that fibromyalgia imposed "significant limitations on [plaintiff's] functioning."

    B. It was proper to consider objective medical evidence or the lack thereof.

    The ALJ clearly accepted plaintiff's claim that she has fibromyalgia.[3] The issue before the court is whether the ALJ's findings regarding the limitations from fibromyalgia symptoms followed the law and are properly supported.

    Social Security rulings state that a first step in determining the extent of a claimant's symptoms is to decide whether objective medical evidence substantiates the claimant's statements about the intensity, persistence and limiting effects of the symptoms. SSR 12-2p, 2012 WL 3104869 *5; SSR 16-3p, 2017 WL 5180304 *5. Here, the ALJ decided that the objective medical evidence did not provide that substantiation. Plaintiff does not contest this.

    Plaintiff, however, contends that the ALJ relied too heavily on upon a lack of objective findings in evaluating the severity of plaintiff's symptoms. Plaintiff notes that the Tenth Circuit has stated "the lack of objective test findings . . . is not determinative of the severity of . . . fibromyalgia." Gilbert v. Astrue, 231 Fed.Appx. 778, 784 (10th Cir. 2007)(emphasis added). The Tenth Circuit has also stated though, that "the physical limitations imposed by [fibromyalgia's] symptoms can be

---

[3] Defendant states in his brief, "[t]he ALJ in no way questioned the existence of Plaintiff's fibromyalgia . . ." Doc. No. 12 at p. 7.

objectively analyzed." <u>Tarpley v. Colvin</u>, 601 Fed.Appx. 641, 643 (10th Cir. 2015).  This is consistent with Social Security Rulings. SSR 12-2p states that "longitudinal records reflecting ongoing medical evaluation and treatment from acceptable sources are especially helpful in establishing both the existence and severity of [fibromyalgia]."  2012 WL 3104869 at * 3.  SSR 16-3p says: "objective medical evidence is a useful indicator to help make reasonable conclusions about the intensity and persistence of symptoms, including the effects those symptoms may have on the ability to perform work-related activities . . ."

On the basis of <u>Tarpley</u> and the above-cited Social Security Rulings, the court finds that it was not legal error for the ALJ to consider objective medical findings or the lack thereof.  There is no dispute that plaintiff's testimony and the reports of her treating medical providers support a claim of disability.  The question becomes whether the objective medical findings and other evidence the ALJ cited adequately supports his decision to discount these complaints and reports.[4]

---

[4] Plaintiff raises the issue of the ALJ's credibility analysis at pp. 27-28 of Doc. No. 9.  This analysis is intertwined with the ALJ's findings of plaintiff's physical limitations and her RFC.  See <u>Poppa v. Astrue</u>, 569 F.3d 1167, 1171 (10th Cir. 2009)("[C]redibility and RFC determinations are inherently intertwined.").

C. <u>The ALJ did not properly analyze the evidence regarding the intensity, persistence and limiting effects of plaintiff's symptoms.</u>

1. <u>Objective medical findings</u>

The court looks first at the objective medical findings relied upon by the ALJ. The ALJ mentioned inconsistent evidence of gait abnormality, inconsistent evidence of muscle weakness, and no evidence of atrophy or muscle wasting as "not suggestive of [fibromyalgia] . . . imposing significant limitations on plaintiff's functioning."[5]  (Tr. 1230). The importance of inconsistent gait abnormality and muscle weakness may be questioned since fibromyalgia symptoms "vary in severity over time and may even be absent on some days." SSR 12-2p, 2012 WL 3104869 *5; see also, <u>Belecz v. Berryhill</u>, 2019 WL 1048834 *14 (D.Idaho 3/4/2019)(discounting evidence of normal gait, normal strength, normal sensation and functional range of motion as undermining claims of severe pain); <u>Correa v. Berryhill</u>, 2018 WL 1472480 *5 (D.N.M. 3/26/2018)(discounting findings of normal reflexes, good grip, lack of joint tenderness and full strength and range of motion as undermining credibility). The Tenth Circuit has also observed that:

> [People with fibromyalgia] usually look healthy. Their joints appear normal, and further musculoskeletal examination indicates no objective joint swelling, although there may be tenderness on palpation. In addition, muscle strength, sensory functions, and

---

[5] The ALJ also noted "mild to moderate abnormalities" reflected in examinations without specifying what these abnormalities were. (Tr. 1230).

reflexes are normal despite the patient's complaints of acral numbness.

Moore v. Barnhart, 114 Fed.Appx. 983, 991-92 (10th Cir. 2004)(quoting Rollins v. Massanari, 261 F.3d 853, 863 (9th Cir. 2001)(Ferguson, J., dissenting)(quoting Muhammad B. Yunus, Fibromyalgia Syndrome: Blueprint for a Reliable Diagnosis, Consultant, June 1996 at 1260)).  Furthermore, the record in this case contains the notes of numerous visits to plaintiff's primary care physician and mental health therapist.  These notes frequently document plaintiff's use of a cane or quad-cane and gait abnormalities over several years.[6]

SSR 16-3p indicates that muscle atrophy or wasting may be considered under circumstances which were not part of the ALJ's findings.  SSR 16-3p states:

> [A]n individual with reduced muscle strength testing who indicates that for the last year pain has limited his or her standing and walking to no more than a few minutes a day would be expected to have some signs of muscle wasting as a result.  If no muscle wasting were present, we might not, depending on the other evidence in the record, find the individual's reduced muscle strength on clinical testing to be consistent with the individual's alleged impairment-related symptoms.

2017 WL 5180304 at *5.  The record in this case does not indicate a claim that plaintiff's standing and walking is limited to no more than a few minutes a day.  Her testimony has been that she requires frequent rests between short spans of light activity,

---

[6] The record also indicates that plaintiff sometimes has used a walker.

such as sorting clothes, doing dishes, simple cooking, or going to the mailbox.  Moreover, the lack of muscle wasting, as noted in the excerpt from SSR 16-3p, is not a sole determining factor (nor is any objective medical evidence – id.), it is but one factor to consider with other evidence.

### 2. Other evidence

Next, the court looks at the other evidence relied upon by the ALJ.  The ALJ found that plaintiff's subjective reports to "her treatment providers are generally consistent with her testimony and other reports throughout the record." (Tr. 1232).  But, he discounted plaintiff's allegations of disabling pain in part because he concluded that she had only received a "moderate level of treatment." (Tr. 1230).

The record reflects that plaintiff has engaged in monthly doctor's appointments with her primary care physician and monthly visits with a mental health therapist over a period of several years.  She has had several appointments with a rheumatologist, as well as visits with multiple neurologists, mental health providers and other physicians.  She has had a lengthy list of prescriptions for numerous medical issues.  The ALJ mentions pain medications "including tramadol and Flexeril." (Tr. 1230).  Other pain medications noted in the record are Lyrica, Prednisone, Tylenol, Percoset, Indomethacin, Cymbalta, Neurontin, Voltaren, Trileptal, Hydrocodone, oxycodone and Savella.  The ALJ states that "[t]here

is no indication that [plaintiff] was prescribed medications targeted at treating fibromyalgia." (Tr. 1230). The record may be somewhat unclear given the large array of plaintiff's medical issues, but it suggests to the court that Savella, Cymbalta, Lyrica and Prednisone as well as other pain medications were prescribed to mitigate plaintiff's pain from fibromyalgia as well as other sources.

The ALJ states plaintiff did not undergo trigger point injections to alleviate her pain. (Tr. 1230). The record, however, does not show that trigger point injections were recommended to plaintiff. Therefore, this factor does not strongly support the ALJ's findings as to the limitations from fibromyalgia. See Belecz, 2019 WL 1048834 at *10 & *14 (failure to seek unprescribed trigger point injections not grounds to find that doctor's opinion was inconsistent with treatment history or to discount claimant's credibility).

Plaintiff did not do physical therapy or aquatic therapy as recommended.[7] The record also shows that doctors recommended very light exercise and staying active, with only infrequent or limited compliance by plaintiff. These findings have little bearing upon the intensity and persistence of plaintiff's limitations since the ALJ has made no findings as to whether therapy or exercise would

---

[7] Once plaintiff indicated she could not afford physical therapy. (Tr. 1059).

restore plaintiff's ability to work, and whether there was a justifiable excuse for failing to do the therapy and exercise. Such findings are required by Thompson v. Sullivan, 987 F.2d 1482, 1490 (10th Cir. 1993). This provides grounds to reject the ALJ's decision, particularly in light of plaintiff's extensive record of seeking medical care. See Carter v. Astrue, 2012 WL 1584472 *5 (D.Kan. 5/4/2012)(concerning failure to adhere to diabetic diet and exercise program); Field v. Astrue, 2011 WL 3328517 *10-11 (D.Kan. 8/2/2011)(concerning noncompliance with advice to stop smoking, exercise, and maintain a good diet); see also SSR 16-3p, 2017 WL 5180304 at *9 ("Persistent attempts to obtain relief of symptoms, such as increasing dosages and changing medications, trying a variety of treatments, referrals to specialists, or change treatment sources may be an indication that an individual's symptoms are a source of distress and may show that they are intense and persistent.").

The ALJ also discounted the significance of plaintiff's limitations by referring to plaintiff's activities of daily living. He stated the following:

> [T]he record reflects that [plaintiff] is able to engage
> in numerous activities of daily living. She can cook
> simple meals. She can perform some household chores.
> She is able to drive. She is able to go shopping
> (Exhibit 13E). She is able to use a computer. Overall,
> [plaintiff's] descriptions of her daily activities are
> essentially normal. Her activities are not limited to
> the extent one would expect, given the complaints of
> disabling symptoms and limitations that preclude her

13

> from work activities.  Although the clamant may not be
> able to engage in all of the activities that she did in
> the past and it may take her longer to perform the tasks,
> she is more active than would be expected if all of her
> allegations were consistent with the record.

(Tr. 1232-33).  The ALJ repeats this line of analysis in rejecting the opinions offered by plaintiff's long-time primary care physician and a clinical social worker, and in extending significant weight to the opinion of state agency psychologists. (Tr. 1233-34).  His only reference to document plaintiff's activities of daily living is Exhibit 13E.  This is a function report plaintiff completed on May 27, 2012.

The function report describes a normal day as:  getting up, getting dressed, soaking dishes in water, rest for a while, go back and do the dishes, and then go sit.  (Tr. 486).  Plaintiff states that she cannot stand up while getting dressed or while taking a shower.  Id.  She states that it is very hard to use her hands to fix her hair and that she cannot use a regular razor. Id.  The report indicates that plaintiff can make sandwiches and frozen dinners, but that her husband often has to carry her plate. (Tr. 486-87).  She has to take breaks when doing the dishes, sorting laundry, vacuuming, or dusting because she can only stand for 10 to 15 minutes at a time.  (Tr. 487).  She does not do yard work.  See (Tr. 487-88).  She seldom goes out.  She can drive a car for short periods.  (Tr. 488).  She can shop in stores or on the computer, but her husband does most of that.  Id.  Again, she

requires breaks if she shops.   Her social activities have been
severely limited, as well as her hobbies.   See (Tr. 489-90).
Plaintiff completed a function report on December 30, 2011 which
was substantially the same.[8]  (Tr. 99-106).

Contrary to the ALJ's depiction, plaintiff's descriptions of
her daily activities are not "essentially normal."   Plaintiff
indicates that she does not engage in almost all of the activities
she did in the past and that it takes her much longer than ordinary
to do simple chores.   It is well-established that the sporadic
performance of daily activities does not prove that a person is
able to engage in substantial gainful activity.  Sitsler v. Astrue,
410 Fed.Appx. 112, 117-18 (10th Cir. 2011)(washing dishes and
vacuuming for a few minutes);  Clark v. Barnhart, 64 Fed.Appx.
688, 692 (10th Cir. 2003)(light household chores and other
activities requiring frequent rest); Thompson, 987 F.2d at 1490
(light housework); Frey v. Bowen, 816 F.2d 508, 517 (10th Cir.
1987)(minor household chores); Byron v. Heckler, 742 F.2d 1232,
1235 (10th Cir. 1984)(intermittent work as a janitor for an hour
or so intermittently); Broadbent v. Harris, 698 F.2d 407, 413 (10th
Cir. 1983)(a few household tasks); Swenson v. Berryhill, 2017 WL

---

[8] In her more recent testimony given on December 6, 2017, plaintiff stated she
no longer drives.  (Tr. 1265).  Her testimony on June 2, 2015 indicated that
she tried chair aerobics (Tr. 1408), that she walks to the mailbox everyday
(Tr. 1421), and that she feeds her dogs (Tr. 1421).  On May 22, 2013, she
testified that she cannot watch her grandchildren. (Tr. 85).  In general, her
testimony is consistent.

3437689 *5 (D.Kan. 8/10/2017)(cooking and light housekeeping). Social security regulations also provide that activities like caring for yourself and household tasks are not considered substantial gainful activity. 20 C.F.R. § 404.1572(c). While the ALJ may consider activities of daily living in deciding the extent of plaintiff's limitations, the court is convinced that plaintiff's activities of daily living as described throughout the record do not support the ALJ's findings as to plaintiff's limitations from fibromyalgia, the weight given to plaintiff's testimony, or the opinions from medical sources.

Defendant contends that this case is similar to L.S. v. Saul, 2019 WL 5455822 (D.Kan. 10/24/19), where the court sustained the denial of benefits to a claimant with fibromyalgia, obesity, anxiety and other ailments. While there are some similarities,[9] there are important differences. The claimant in L.S. had normal gait and station, walked without an assistive device, and received improvement from treatment for her fibromyalgia symptoms. Id. at *4. Further, the claimant was significantly more active than plaintiff in this case. She attended church and school events, cared for her children, and managed day-to-day activities. Id. The claimant in L.S. also reported being physically active, doing such things as water aerobics. Id. The court observed in addition

[9] For instance, medical providers encouraged activity and exercise in both cases.

that the treating physician's records in L.S. said very little about fibromyalgia. Id. at *7. This contrasts significantly with the records of plaintiff's treating physician who frequently noted plaintiff's fibromyalgia and often adjusted plaintiff's pain medication.  Plaintiff's fibromyalgia was noted and discussed by other examining physicians as well.

The court observes that the opinion in L.S. drew a comparison with the facts in Tarpley. Id. at *7. Again, while there are some similarities between Tarpley and this case, there seem to be significant differences, although the facts in Tarpley are not explicated in detail.  The Tenth Circuit noted that examination records showed that the claimant in Tarpley walked and moved without much difficulty, cared for her personal needs, did household chores, went shopping, stayed active with friends and family, and received great relief from medication.  601 Fed.Appx. at 643.  While one might say that the record in this case shows that plaintiff cares for her personal needs, does household chores and goes shopping, the record indicates significant qualifications to plaintiff's performance of these tasks which surely would have been discussed if they were present in Tarpley.

IV. CONCLUSION

In conclusion, the ALJ did not properly analyze the evidence regarding the disabling limitations from fibromyalgia symptoms and tie his findings closely to substantial evidence.  The court

17

directs that the decision of the Commissioner be reversed and that judgment shall be entered pursuant to sentence four of 42 U.S.C. § 405(g) remanding the case for further proceedings consistent with this memorandum and order.

**IT IS SO ORDERED.**

Dated this 29th day of April 2020, at Topeka, Kansas.

s/Sam A. Crow_____
U.S. District Senior Judge